UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

S B ICE, LLC,
a Florida limited liability company,

                Plaintiff,

        v.

MGN, LLC d/b/a TOUCH, a New York limited
liability company, MUHAMET NIKEZI, an
individual, NAIM NEZAJ, an individual,

                Defendants.

------------------------------------------------------------------x

Case No.: 1:08-cv-3164
Judge Cote

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO DISMISS THE COMPLAINT AND TO DEFENDANTS' AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS**

       Plaintiff S B ICE, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files the following Memorandum of Law in Opposition to Defendants' MGN, LLC d/b/a **TOUCH**, MUHAMET NIKEZI, and NAIM NEZAJ ("Defendants") combined Amended Motion to Dismiss and Defendants' Amended Motion for Judgment on the Pleadings [DE-27].

## INTRODUCTION

       Plaintiff is entitled to protection of its trademark "TOUCH" because the Defendant's actions constitute infringement of Plaintiff's federally registered trademark in violation of Plaintiff's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114. (Compl. ¶ 25). Defendants are unable to prove that they meet the elements of good faith and continuous use of Plaintiff's mark TOUCH ® as required to establish the "limited area" defense of Section 1115(b)(5) of the Lanham Act, nor do the pleadings or expected evidence indicate facts

analogous to those upon which the case *Dawn Donut Co. v. Hart's Food Stores, Inc.*[1] was decided. Furthermore, Plaintiff will be able to enforce its registered mark and thereby obtain the relief sought because it has pled, and established through the Declaration of David Tornek, that a likelihood of entry and likelihood of public confusion in the New York City and New York State market area.

Defendants' entire argument hinges upon two incorrect factual assumptions, namely: 1) that Plaintiff has not, and is not likely to enter the New York market; and that 2) Plaintiff has suffered no injury resulting from a likelihood of confusion as a result thereof. Quite to the contrary, although Plaintiff does not operate a bar, restaurant or nightclub located in the State of New York, it entered the New York market through extensive and continuous use of the TOUCH mark in New York years ago. Furthermore, confusion is not only possible or likely, it has actually occurred as a result of Defendants' infringing use of the TOUCH mark long after Plaintiff's federal registration for the mark issued. Notwithstanding any dispute as to these facts, Defendants motion fails to meet the applicable standard of demonstrating that Plaintiff's claims are barred as a matter of law.

## **STATEMENT OF FACTS**

Plaintiff began using the TOUCH mark in connection with nightclub, bar and restaurant services in August of 2000. (Decl. Tornek, ¶5 and Exh "A"; *Also see* Complaint, ¶¶5, 11 and 12). On July 13, 2004, the United States Patent and Trademark Office ("USPTO") issued a federal Trademark Registration to Plaintiff for the mark TOUCH in connection with "nightclub services in Class 041" and "restaurant services in Class 043." (*Id.; also see* Complaint, ¶9, Exh. "A"). Plaintiff has continuously used the TOUCH mark in connection with its Miami Beach

---

[1] *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2nd Cir. 1959).

nightclub, restaurant and bar, since August 2000 through the present, nationwide including New York City and other parts of New York State, and internationally. (Decl. Tornek, ¶¶7-10, 16-19; *also see* Complaint, ¶¶12 and 13).

Plaintiff has contracted with various travel agencies, tour groups, public relations consultants and firms located in Miami, Florida and New York, New York for the express purpose of marketing, generating publicity and promoting Plaintiff's business and TOUCH mark nationally, with a particular focus on New York City and the surrounding areas. (Decl. Tornek, ¶¶7-10, 16-20). Plaintiff's business and mark TOUCH are known nationally and is frequented by numerous celebrities in the film, television, music, sports and other areas of the entertainment industry. (Decl. Tornek, ¶7 and Exh "B"; *also see* Complaint, ¶13). Plaintiff also commissioned the production of a promotional video which played on a rotational basis from approximately 2004 through 2006 on US Airways flights from South Florida to the New York City area. (Decl. Tornek, ¶16).

Plaintiff has a significant clientele from New York City and other parts of the New York State. (Decl. Tornek, ¶¶14-15). Plaintiff has records of 1112 reservations being made from patrons calling from New York area codes for the year 2007 alone. (Decl. Tornek, ¶15). Plaintiff does not currently operate a restaurant, nightclub or bar located in New York State. (Answer to Second Am. Counterclaim, ¶¶10-17)[DE-21].

Since November 27, 2007 through the present, Defendants have owned or operated a nightclub and bar in New York, New York named "TOUCH." (Second Amended Answer to Complaint, ¶14)[DE-20]. In connection with their restaurant, Defendants have used the mark TOUCH since November 29, 2007 through the present. (Second Amended Answer to Complaint,

¶15)[DE-20]. Defendants adopted and began using the mark TOUCH long after Plaintiff's mark

was registered with the USPTO. (Second Amended Answer to Complaint, ¶16 and 22)[DE-20].

Actual and prospective consumers, as well as at least one nightclub industry promoter in

New York have been actually confused by Defendants' use of the TOUCH mark, and have

inquired or mistakenly believed that an affiliation, association or connection between

Defendants' and Plaintiff or their businesses named "TOUCH" exists. (Decl. Tornek, ¶¶14, 20

and 21 and Exh. "C"; *also see* Complaint ¶20).

<u>**ARGUMENT**</u>

**I.    The Defendants' activities within the state of New York do not fall within the "limited area" defense to trademark infringement because the Defendants did not act in good faith and did not continuously use the mark as required by Section 1115(b)(5) of the Lanham Act.**

The Defendants cannot invoke the "limited area" defense because they did not use the

trademark "TOUCH" continuously in the New York area and in good faith, without notice of

infringement. Generally, when one party has federally-registered a trademark and the infringing

party has not, the registrant is entitled to nationwide use and protection of the trademark. *See*

*generally Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc.*, 831 F.2d 1177, 1177 (1st Cir.

1987). The United States Supreme Court established an exception to this rule in the case

*Hanover Star Milling Co. v. Metcalf,* which was later codified into section 1115(b)(5) of the

Lanham Act. *Thrifty*, at 1180-81 (citing to *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403,

403 (1916)). The Court declared that when there is a remote non-registered user, the user would

be given priority in areas where it established continuous use of the mark since *before* the

trademark was registered by the registrant or senior user. *Thrifty Rent-A-Car System*, 831 F.2d at

1181. However, the scope of protection afforded by § 1115(b)(5) is limited. *Id.* In order to

invoke this exception, the junior user must not only have used the mark continuously in that

location, but must also have acted in good faith without notice of the infringing mark. 15 U.S.C. § 1115(b)(5) (West 2008); *Thrifty Rent-A-Cars Systems*, 831 F.2d at 118 (citing to *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904, 907 (7th Cir. 1968)). In *Burger King of Florida*, the court said that a senior user has exclusive rights to use a mark in any state, except the limited area where the junior user actually used the same trademark which was registered under the junior user's state's law prior to the senior user's federal registration. *Burger King of Florida*, 403 F.2d at 906. In addition, defendants who use a trademark they have registered under a state's law in a limited area, do not acquire exclusive rights they would have acquired had they used their mark throughout the state prior to a senior user's registration. *Id.* at 907 (stating that the Lanham Act does not enlarge the exclusive right conferred by common law in an area where federal mark has priority). With the passing of the Lanham Act, Congress intended "to afford nationwide protection to federally-registered marks, and… once certificate has issued, no person can acquire any additional rights superior to those obtained by the federal registrant." *Id.* at 908 (citing to *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2nd Cir. 1959).

The majority of courts have agreed that the good faith requirement of the Lanham Act is measured by the lack of knowledge that a junior user possesses regarding a senior user's registered mark. *See* 5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:9 (4th ed. 2008). According to the Lanham Act, registration of a trademark provides constructive notice of the mark and therefore, "good faith" is destroyed by the statutory constructive notice. *Id.* (citing to *Johanna Farms, Inc. v. Citrus Bowl*, Inc., 468 F. Supp. 866, 877 (E.D.N.Y. 1978) (stating that "if a junior user's use of a mark in the face of constructive notice of the senior's use by virtue of the federal registration of the mark negates an inference of good faith… then actual notice of another's claim to the mark must demand a similar

conclusion."). The critical date to test good faith is the date of the junior user's first use. *See* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:9. Therefore, if a registrant registered a mark prior to the junior user's first use, the junior user would not meet the good faith requirement. *See id.*

In the instant action, Defendants began using the TOUCH mark nearly seven (7) years after the Plaintiff, and approximately three (3) years after the mark was federally registered. What is significant for purposes of the pending motion is that these facts were admitted by the Defendants, and the Plaintiff pled that the Defendants began using the mark with knowledge of Plaintiff's mark, and with the intent to reap the benefits of Plaintiff's long established good will nationally, and in New York.

Pursuant to 15 U.S.C. § 1065, the federal certificate of registration is 'conclusive evidence' of plaintiff's 'exclusive right' to use the mark. *Burger King of Florida,* 403 F.2d at 907. Once a mark has been federally registered, a subsequent user is deemed to have constructive knowledge of the certificate of registration and is no longer acting in good faith. *Id.* In *Burger King of Florida*, the defendants registered the trademark 'Burger King' under Illinois law prior to plaintiffs' federal registration, notwithstanding plaintiff's notice of defendants' prior state registration. *Id.* at 906-07. The court held that the plaintiff's federal registration gave plaintiff the exclusive right to use the mark in Illinois except in the market area where the defendants used the mark before the plaintiffs' federal registration. *Id.* at 907. The court reasoned that since defendants were able to prove that they adopted the mark 'Burger King' without knowledge of plaintiffs' registration, they were entitled to protection in the area where they had been operating. *Id.* at 907.

In addition to the good faith requirement set out by the Lanham Act, the junior user's first use must have been continuous, meaning that it must have occurred prior to federal registration by the senior user and continued thereafter. *See Thrifty Rent-A-Car Systems*, 831 F.2d at 1181 (citing to *Burger King of Florida, Inc.*, 403 F.2d at 907). In *Thrifty*, the circuit court of appeals affirmed the district court's finding that the non-registered defendant had been using the registered mark in the E. Taunton, Massachusetts area prior to the registration of the mark by the plaintiff. *Thrifty Rent-A-Car Systems*, 831 F.2d at 1181. The court held that since defendant had been continuously using the mark prior to its registration it would be entitled to continue doing business in the East Taunton area. *Id.* at 1183; *see also* 2 McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 26:18 (2d. ed. 1984). Further, the court held that the plaintiff registrant would be enjoined from establishing a franchise there since it registered the mark after the defendant's use. *Thrifty Rent-A-Car Systems*, 831 F.2d at 1183. The court reasoned that there is a settled principle that "a junior user can conduct its activities within the market it had carved out for itself *before* the senior user obtained federal registration." *Id.* (citing to *Raxton Corp. v. Anamia Assocs., Inc.*, 635 F.2d 924, 927 (1st Cir. 1980)); *Burger King of Florida*, 403 F.2d at 907 (finding that the plaintiffs had "the 'incontestable' right to use the mark in commerce, except to the extent that such use infringes what valid right the defendants have acquired by their *continuous use* of the same mark prior to plaintiffs' federal registration.").

The Defendants also do not meet the good faith requirement established by the Lanham Act, because Defendants had constructive knowledge of the federally registered mark "TOUCH". The Defendants began using the name and mark "TOUCH" on or about November 29, 2007, well after Plaintiff's first use of the mark in August of 2000. (Compl. ¶ 16.) Unlike the defendants in *Burger King* who had begun using, and even registered, the mark "Burger King"

without knowledge of the plaintiff's federal registration, the Defendants in our case did not adopt the registered mark without knowledge Plaintiff's registration because their use of the mark "TOUCH" began after Plaintiff's federal registration of the mark. (*Id.* at ¶ ¶ 16, 22.) By providing, offering, advertising, and promoting their services in connection with the mark "TOUCH" after Plaintiff's federal registration, the Defendants are deemed to have constructive knowledge and therefore, did not act in good faith as required by the federal statute.

The Defendants are not entitled to the "limited area" defense, because the Defendants' use of the mark, even if in good faith, has not been "continuously," in good faith within the meaning of the Lanham Act since after receiving actual notice of Plaintiff's claim, the Defendants have continued to use the mark to this day. Unlike the defendants in *Thrifty* who began using the registered mark prior to the plaintiff's federal registration of the mark in question, the Defendants in our case began using Plaintiff's mark "TOUCH" years after Plaintiff's first use of the mark. The Defendants cannot now claim that they 'carved out' a market for themselves under the mark "TOUCH" within their territory if the activities related to the use of the mark commenced after Plaintiff's federal registration. Based on the facts of our case, the court is likely to find that Plaintiff is entitled to federal protection of its priority rights over the Defendants because Defendants failed to meet the requirements of good faith and continuous use.

II. **S B ICE is currently entitled to injunctive relief because it already expanded its use of the mark "TOUCH" into the New York market area by advertising its services, and Defendants' use therefore creates a likelihood of public confusion.**

Plaintiff is entitled to injunctive relief because it entered the Defendants' claimed territory, New York City and State, and did so long before the Defendants. Confusion resulting from Defendants' use of the TOUCH mark is therefore likely (and has actually occurred). A

plaintiff in a trademark infringement action has standing if he has a real and reasonable apprehension of injury. *See Apex Beauty Products Manufacturing Corporation v. Brown Shoe Co.*, 209 F.Supp. 73, 74 (S.D.N.Y. 1962).

The Second Circuit, in *Dawn Donut*, added to the "limited area" exception in § 1115(b)(5) by stating that a registrant is entitled to relief under the Lanham Act if: (1) a likelihood of public confusion exists from the concurrent use of the mark and (2) a present likelihood exists that the registrant would expand its use of the mark into the non-registered party's market area. *Dawn Donut Co.*, 267 F.2d at 364. The *Dawn Donut* case defines the territorial rights for a registered mark under certain circumstances. 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:33 (4th ed. 2008). The basic premise of the court's holding is that although a registrant of a federal mark might have a nationwide right to use the mark, the registrant is not entitled to injunctive relief until it shows a likelihood of entry. *Id.* (stating that a registrant's injunctive remedy does not ripen until the registrant shows a likelihood of entry into the disputed territory). It logically follows that once there is a likelihood of entry, there is a likelihood that customers in that territory will be faced with two products or services marketed under confusingly similar marks. *Id.; see Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1049 (6th Cir. 1999)(establishing that "likelihood of entry" is just one of eight factors under this test, and it not dispositive of liability)[*cited by Defendants*].[2]

---

[2]. Note that each circuit applies its own test to determine likelihood of confusion. In the Second Circuit, the eight-factor "Polaroid" test is used. The factors are: (1) the strength of the senior user's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the junior user's good faith in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of buyers. 4 McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:32 (4th ed. 2008).

In order for there to be a likelihood of entry, there need ***not*** be an actual establishment (i.e., nightclubs, bars, restaurants) or sales by the registrant in the defendant's market area. 5 McCarthy on Trademarks and Unfair Competition § 26:34 (4th ed. 2008).[3] A trademark owner is entitled to protection outside of its current geographical area into any areas which can be deemed within its "natural zone of expansion." *Id.* at § 26:2. The registrant can enter a market either by advertising, reputation, actual sales or actual presence. *See id. at 26:34* (stating that if the mark has already established a reputation in the junior user's territory, then there is no need to prove likelihood of entry because a likelihood of confusion now exists).[4] In *Dawn Donut*, the court said that "it is enough that expansion by registrant into market of junior user is likely in the normal course of registrant's business." *Dawn Donut Co.*, 267 F.2d at 364. In *Dawn Donut*, the plaintiff was the senior user of the mark "DAWN" for doughnuts at the wholesale level. *Id.* at 360. At the time the junior user first adopted the mark "DAWN" for retail purposes, the plaintiff had not yet begun to use the mark in the defendant's trade area. *Id.* The court stated that since the concurrent use of the mark was at different market levels and separate trading areas, public confusion was unlikely. *Id.* at 364. The court held that until the federal registrant entered the defendant's trade area at the retail level, the registrant would not be entitled to enjoin the defendant from using the mark within the trade area. *Id.* It reasoned that since the federal

---

[3]. However, some courts have said that in order to prove "likelihood of entry," the federal registrant must show some concrete, impending plants for entry (such as leasing the premises or show that it is ready, willing and able to commence sales under the registered mark as soon as the court enjoins the junior user, or prove that it has licensed the use of the mark for the disputed territory). 5 McCarthy on Trademarks and Unfair Competition § 26:34 (4th ed. 2008).

[4]. Some courts have held that a registrant may be entitled to enjoin a junior user if the registrant can show entry through advertising and existence of a reputation zone such that confusion is likely. *See Scientific Applications, Inc. v. Energy Conservation Corp.*, 436 F.Supp. 354 (N.D. Ga. 1977).

registrant was unable to prove a present likelihood of entry into the disputed area, there was no present likelihood of confusion in that area and thus, no grounds for injunctive relief at that time. *Id.*

Any doubt as to whether Plaintiff's years of use of the TOUCH mark in New York constitutes "entry" into the New York market can be satisfied purely by the evidence of actual consumer confusion which has already occurred.  Evidence of actual consumer confusion is also evidence of secondary meaning.[5]  J.T. McCarthy, Trademarks and Unfair Competition, §15:11 (2000)("…if buyers are confused, then this also means that they must have recognized plaintiff's word as a trademark and associated only with plaintiff. If this is not so, how could there be any confusion?"). *Id.*; *Also see*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 120 L. Ed. 2d. 615, 112 S. Ct. 2753, 2758 (1992), reh'g denied, 505 U.S. 1244, 120 L. Ed. 2d 947, 113 S. Ct. 20 (1992).

A likelihood of confusion exists as to the concurrent use of the mark "TOUCH" by Plaintiff and the Defendants, because Plaintiff entered the Defendants' trading area and acquired good will and consumer recognition in New York as required for meeting the likelihood of entry requirement under *Dawn Donut*. Unlike the parties in *Dawn Donut* who were operating under "two sufficiently distinct and geographically separate markets," the parties in our case are using the mark "TOUCH" at the same market level. (Compl. ¶ ¶ 9-15.) Furthermore, Plaintiff expanded its use of the mark "TOUCH" by advertising and offering its bar and nightclub services to customers in the New York market area. (*Id.* at ¶ 5.) Being that Plaintiff caters to a largely tourist-driven clientele, a likelihood of confusion will undoubtedly arise given Plaintiff's

---

[5] Secondary meaning is the connection in the consumer's mind between the mark and the provider of the goods or services. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1536 n. 14 (11th Cir. 1986).

years of advertising and marketing its services within the New York City and State market area. Once the court establishes, through a full hearing on the evidence to be presented, that there is a likelihood of public confusion by the concurrent use of the mark "TOUCH" by Plaintiff and the Defendants, Plaintiff will be entitled to injunctive relief and damages.[6] Not only is Plaintiff entitled to injunctive relief, under *Dawn Donut*, and the Lanham Act, it has a duty to police its federally registered mark from misleading and infringing uses to avoid being subject to cancellation of the registration. *Id*. at 366; 15 U.S.C. § 1064.

Defendants put forth no argument relative to the various "likelihood of confusion" factors applied by the Second Circuit. It relied completely upon its claim that confusion is not likely or possible because Plaintiff does not operate a nightclub, bar or restaurant in New York in connection with the mark TOUCH. For purposes of this motion only, the likelihood of confusion factors which do not relate to geography have been considered conceded by Defendants.

III. **The *Dawn Donut* holding is of limited applicability to the facts of the instant action.**

The *Dawn Donut* case was decided in 1959 on operative facts which occurred in approximately 1951. The facts occurred during a time prior to mass media, the internet, cable television and prior to the proliferation of commercial air travel. During this period, development of nationwide and global recognition of a trademark and brand identity was far more difficult than the present day. In 1999, the Sixth Circuit held that it would not follow the *Dawn Donut* rule because *Dawn Donut* was decided in a less mobile age. The court said that in

---

[6] Although the *Dawn Donut* case is unclear as to whether all forms of relief are barred if the factual circumstances discussed in the opinion are found to be present. The great majority of the opinion, if not all of it, discusses the question of whether injunctive relief was available, and does not focus on whether damages are available. Nonetheless, Defendants herein are broadly requesting that Plaintiff be barred from all forms of relief, and is arguing that all claims are barred as a matter of law.

this day and age, nation-wide communications, such as the internet, would establish knowledge

of a mark across the nation for even the smallest merchant who owns a federal registration. 5

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26: 33 (citing to *Circuit City Stores,*

*Inc. v. Carmax, Inc.*, 165 F.3d 1047, 1049 (6th Cir. 1999) (Judge Jones, concurring said: "If a

plaintiff can otherwise demonstrate a likelihood of confusion by a strong showing on the other

seven factors [required to prove likelihood of confusion in this district], it seems an odd result

that the same plaintiff cannot obtain an injunction against an infringer simply because the parties

operate in different geographical regions.")).

Against that backdrop, many of the facts and circumstances upon which the Dawn Donut

opinion was based are qualitatively distinct from those of the instant action.  As evidenced by the

Declaration of David Tornek submitted herewith, TOUCH is a nationwide brand, over a period

of eight (8) years, and has acquired customer recognition and good will in New York.  This is

evidenced by the significant customer base from New York, the publicity enjoyed in the New

York area, and the confusion suffered relative to a mistaken New York nightclub promoter who

believed that Plaintiff and Defendants were somehow affiliated.  Such brand identification might

not have been possible, or as likely, at the time *Dawn Donut* was decided.

Unlike the plaintiff in *Dawn Donut*, Plaintiff herein has advertised, marketed and

promoted its business and TOUCH mark in the Defendants' city since long before the

Defendants' adoption of the mark, and has not ceased such uses of the mark. *See Dawn Donut*, at

361-362.  Unlike the defendant in *Dawn Donut* whose use of the mark was confined to a 45 mile

radius, the Defendants' nightclub is promoted worldwide on the internet.  *See id*. at 361. Without

judicial relief, Plaintiff cannot be assured that the Defendants' use of the mark through

promotional and advertising will be confined to any limited area.  This fact negates any bar to

relief even under *Dawn Donut*. *See id.* at 360 and 364 (basing its holding on a finding of both no likelihood of confusion in separate, confined trading areas and no present likelihood of expansion by the plaintiff). Furthermore, New York City can hardly be described as a discrete, remote area like Rochester as implied at Footnote 5 of Defendants' Motion. Unlike the Plaintiff in *Dawn Donut*, the Plaintiff herein is not likely, and has not, limited its use its mark to its home state.[7] Unlike the retail baking industry with which the court in *Dawn Donut* was concerned in the 1950's, at least today, in the restaurant, bar and nightclub industry, customers will travel more than a 25 mile radius from home to a nightclub, bar or restaurant which is located within an international tourist attraction. *See id* at 364.

Of most significance, there was no finding of actual confusion resulting from the concurrent use of the marks by the parties in Dawn Donut. *Id.* at 365. The holding of *Dawn Donut* was expressly reliant upon this lack of actual confusion and the other distinguishing facts discussed above which are not present in the instant case, much less in the pleadings. *Id.* The Declaration of David Tornek, and the exhibits thereto clearly evidence instances of actual consumer confusion, at least one of which occurred in New York. No evidence is on the record which rebuts this evidence of actual confusion. Plaintiff's claims can therefore not be deemed to be barred as a matter of law under *Dawn Donut*, especially not at this early stage based upon pleadings alone, without any supporting evidence offered by the Defendants. Even if such contradictory evidence can be offered by the Defendants, such a dispute of material fact alone would defeat Defendants' pending motion.

---

[7] "The decisive question is whether plaintiff's use of the mark 'Dawn' at the retail level is likely to be confined to its current area of use or whether in the normal course of business, it is likely to expand the retail use of the mark into defendant's trading area." *Dawn Donut*, at 364.

## CONCLUSION

For all of the reasons stated above, Defendants' Motion should be denied in its entirety, or in the alternative denied only as to Plaintiff's claims for damages, costs and attorneys' fees.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing pleading was electronically filed with the Court and forwarded via ECF to Glenn A. Wolther this 27th day of August, 2008.

Respectfully submitted,

Michael I. Santucci, Esq.
SANTUCCI PRIORE & LONG, LLP
Attorneys for Plaintiff
500 West Cypress Creek Road
Suite 500
Fort Lauderdale, Florida 33309
Telephone: 954.351.7474
Facsimile: 954.351.7475

By:    s/s Michael I. Santucci
        Fla. Bar No.: 0105260
        Admitted *Pro Hac Vice*

Co-Counsel for Plaintiff
Rachel B. Goldman, Esq.
**BRACEWELL & GIULIANI, LLP**
Attorneys for Plaintiff
1177 Avenue of the Americas
19th Floor
New York, New York 10036-2714
Telephone: 212-508-6135
Facsimile: 212-938-3835
E-Mail: rachel.goldman@bgllp.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

S B ICE, LLC,
a Florida limited liability company,

           Plaintiff,

      v.

MGN, LLC d/b/a TOUCH, a New York limited
liability company, MUHAMET NIKEZI, an
individual, NAIM NEZAJ, an individual,

           Defendants.

-----------------------------------------------------------------x

Case No.: 08cv03164
Judge Cote

**DECLARATION
OF DAVID TORNEK**

**STATE OF FLORIDA**        )
                             )
**COUNTY OF MIAMI-DADE**   )

      I, DAVID TORNEK, do hereby declare and aver as follows:

      1.    I hereby make this Declaration based upon my personal knowledge, and understand that willful false statements and the like are made punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

      2.    I am over the age of eighteen (18), am of sound mind, and am qualified to make this Declaration.

      3.    Unless otherwise stated, this Declaration is based on my own personal knowledge.

4.      I am the Managing and a Member of SB ICE, LLC, (alternatively "Plaintiff") which is the Plaintiff in the above styled action.  I have been an active principal in the company since its formation in January of 2000.

5.      Since 2000, Plaintiff has owned and operated a nightclub, bar and restaurant in Miami Beach, Florida named TOUCH.  Our federally registered mark TOUCH is used in connection with the business, and is used on all of its menus, signage, promotional material and its advertisements.  *(See the Certificate of Registration attached as Composite **Exhibit "A"** hereto).*

6.      TOUCH is located in a section of Miami Beach known as "Lincoln Road" which is one of Miami Beach's most notable tourist attractions.  Lincoln Road is a street in Miami Beach which is closed off to vehicular traffic, and therefore offers a pleasant and diverse pedestrian experience which is a haven for nightlife.  Many of the restaurants on Lincoln Road also operate as nightclubs and bars, as does TOUCH, given that the area remains very busy and many businesses remain open therein well past 2:00AM.

7.      Our restaurant, nightclub and bar is known nationally as well as internationally, and is regularly frequented by celebrities in the music, film, television, sports and other areas of the entertainment industry.  *(See article from the nationally distributed magazine IN TOUCH, dated April 5, 2004 attached as **Exhibit "B"** hereto).*

8.      One of the significant geographic targets of our marketing, advertising and public relations efforts has been New York, including New York City because many affluent and upper-middle class New York residents live or work in New York City, and often have vacation homes, condominiums or time share property in South Florida, or frequently vacation in South Florida.

2

The demographic of patrons who often frequent nightclubs, bars and late-night restaurants such as ours are especially fond of Miami Beach as a travel destination.

10.    Plaintiff has used the mark TOUCH on advertisements and promotional material nationally and internationally, including New York City and other parts of the State of New York.

11.    A large part of our clientele consists of tourists from all over the United States and the world, including New York State, and other parts of the State of New York.

12.    During the period of 2003 through 2007, we commissioned an agent in New York City whose focus included work with tour and travel agencies in the northeast, including New York City, and other parts of New York State to promote, market advertise and generate interest in our business, and develop good will in connection with our **TOUCH** mark.  This public relations company had TOUCH mentioned on page six (6) in the Daily News as well as other lifestyle mentions.

13.    Throughout the years, including 2007 through the present, we have hired or contracted with companies and individuals such as travel agencies, public relations and marketing consultants, and advertising agencies to generate publicity for our business, to promote our TOUCH mark, and to create an association in the minds of actual and potential consumers and the public at large between Plaintiff and the mark TOUCH.  Susan Scott, Victoria George whose public relations company is located in Manhattan and The Dindy Group located in South Beach are just a few of these individuals with whom we have contracted.

14.    I am personally aware of repeat customers from New York City and other parts of New York State who recognize the TOUCH mark as an indication that Plaintiff is the source of the services through use of the TOUCH mark by Plaintiff in New York City and other parts of

New York State. In fact many of those individuals called or asked when they were visiting if the Touch nightclub in New York City was affiliated with ours.

15.    For example, I have searched through our reservation records for 2007 for customers from the following New York area codes: 212, 315, 347, 516, 518, 585, 607, 631, 646, 716, 718, 845, 914 and 917. Included in my count were all phone numbers that were attached to all reservations, both in house (660) and online (452), for the year 2007. The total number of reservations from patrons with New York area codes, for which we have records, was 1112 for the year 2007. This does not include walk-ins or referral from the various hotels in the area.

16.    Our company commissioned the production of a marketing video for TOUCH nightclub, restaurant and bar which was played on flights from South Florida airports to LaGuardia, Kennedy and Newark airports on US Airways. This video was played from approximately 2004 to 2006 on a rotational basis.

17.    We have also promoted our business and the TOUCH mark through travel agencies who service New York City and the surrounding areas.

18.    We obtained publicity for TOUCH in national magazines which were well known lifestyle and restaurant magazines in the New York Area.

19.    We obtained publicity and or advertised TOUCH in various magazines which are distributed and/or are available in New York City, and other parts of New York State, New Jersey and Connecticut on a rotational contract between five (5) or six (6) magazines. In connection therewith, we specifically requested New York City and the surrounding areas as one of our markets.

20.     On April 24, 2008, we held a special event at TOUCH for Passover.  The well-known freelance nightlife promotional company in New York called "Nelly's List" which has a website at www.nellyslist.com was actually confused by Defendants' use of the mark TOUCH. As shown in the attached promotional material which was printed from the website located at www.nellyslist.com on April 21, 2008, the operators of Nelly's list mistakenly believed that Plaintiff had two locations and advertised Passover events at both our business in Miami Beach and the Defendants' business in New York on the same night, both for the same holiday.  (*See Exhibit "C" hereto*).  We did not solicit this promotion from Nelly's List.

21.     As a result of both Defendants' business called "TOUCH," and our business called "TOUCH" appearing in the same advertisement, on the same website, by the same promotional company, under the identical trademark, it is my belief that our actual and prospective customers were actually confused as to a possible association, affiliation of identity of ownership between Defendants' business and ours.

_____          _____

DATE                              **DAVID TORNEK**

5

22.    On April 21, 2008, we held a special event at TOUCH for Passover. The well-known freelance nightlife promotional company in New York called "Nelly's List" which has a website at www.nellyslist.com was actually confused by Defendants' use of the mark TOUCH. As shown in the attached promotional material which was printed from the website located at www.nellyslist.com on April 21, 2008, the operators of Nelly's list mistakenly believed that Plaintiff had two locations and advertised Passover events at both our business in Miami Beach and the Defendants' business in New York on the same night, both for the same holiday. (See Exhibit "C" hereto). We did not solicit this promotion from Nelly's List.

23.    As a result of both Defendants' business called "TOUCH" and our business called "TOUCH" appearing in the same advertisement on the same website by the same promotional company, under the identical trademark, it is my belief that our actual and prospective customers were actually confused as to a possible association, affiliation of identity of ownership between Defendants' business and ours.

_____        _____
DATE                   DAVID TORNEK

**Int. Cls.: 41 and 43**

**Prior U.S. Cls.: 100, 101 and 107**

**United States Patent and Trademark Office**

Reg. No. 2,862,317
Registered July 13, 2004

## SERVICE MARK
### PRINCIPAL REGISTER

# TOUCH

S B ICE, LLC (FLORIDA LTD LIAB CO)
910 LINCOLN ROAD
MIAMI BEACH, FL 33139

FOR: NIGHT CLUB SERVICES, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 8-0-2000; IN COMMERCE 8-0-2000.

FOR: RESTAURANT SERVICES, IN CLASS 43 (U.S. CLS. 100 AND 101).

FIRST USE 8-0-2000; IN COMMERCE 8-0-2000.

SER. NO. 76-522,977, FILED 6-17-2003.

TINA L. SNAPP, EXAMINING ATTORNEY



EXHIBIT "A"

INDULGENCES

With first-class food and the perfect late-night vibe, it's

# Miami's got the

*i*t's not easy to achieve the goal of a world-class restaurant while also trying to be the stars' favorite late-night hangout in Miami's trendy South Beach setting. But David Tornek's Touch has been striking all the right chords ever since he purchased the space from actor Michael Caine four years ago. "Even from the outside, people feel the energy," says Tornek.

Every night is a party here, with hip Latin music pulsating as belly-dancers and fire-eaters entertain the star-studded crowds. But make no mistake about it: The real heat is in the kitchen, thanks to chef Sean Brasel, who serves up a modern twist on grilled food. The steak dish is a hit with celebrities like David Schwimmer, David Caruso and Ricky Martin, while Eva Mendes and LeAnn Rimes enjoyed the Chilean seabass for dinner.



Touch has been a Miami hotspot for three years.



"I wanted a place that is glamorous, exciting and fresh," says owner David Tornek, who brought in petrified palms that touch the soaring 20-foot ceilings.

PHOTOGRAPHS BY BRIAN SMITH

EXHIBIT

no wonder stars are singing Touch's praises

# right Touch!



Nick Carter, Paris Hilton, music producer Rob Boldt and JC Chasez hung out here. "Touch is an all-night experience," says JC, who recently came in and ordered a $1,600 bottle of wine!



### Spicy rib eye steak with Kansas City spice blend

**Makes 4 servings**

1 Tbs oregano
1 Tbs cumin seed
1 Tbs yellow mustard seed
1 Tbs black mustard seed
2 dry seeded chipotle peppers
3 Tbs kosher salt
1 Tbs paprika
1/2 Tbs cayenne pepper
4 center-cut prime rib eye steaks

Heat oven to 350° F. Place oregano, cumin and mustard seeds on a baking sheet. Toast 5 min. or until spice is aromatic. Pour toasted spices and remaining spice ingredients into a coffee grinder; pulse until fine. Season steaks with spice blend 30 min. before cooking. Heat grill or broiler; cook steaks 12 min., turning once or until desired degree of doneness.

Work time: 10 min.
Total time: 25 min.



When she dined at Touch, Janet Jackson ordered Chilean seabass.



Oscar de la Hoya and his wife, Millie Corretjer, partied together at Touch.



### RACHAEL'S TASTY SALSA

The Food Network's **Rachael Ray's** quick and easy advice:

"I don't like to make people suffer with plain-Jane dinners — it's great to add a side dish that is full of big flavor, like my mango salsa. To make it, all you have to do is mix together a ripe diced and peeled mango; a small red bell pepper, seeded and finely chopped; 1 inch of fresh minced gingerroot; 1/4 of a seedless cucumber, peeled and chopped; 20 blades of finely chopped fresh chives; and the juice of 1 lime."

APRIL 5, 2004 IN TOUCH 59

CELEBS CLOCKWISE FROM TOP: SETH BROWARNIK/WIRE IMAGE; ADAM SCULL/PHOTOLINK; KEVIN MAZUR/WIREIMAGE. FOOD: FOOD STYLING BY BRIAN PRESTON-CAMPBELL; PROP STYLIST JET MICHAEL. HEPINSTON OUTPOST OF MARK EDWARD INC. RACHAEL: PORTRAIT BY MARK EDWARD INC/FOOD: CANDLELIGHT ART/LICENSING INC

NELLYS LIST 'the hottest party in the industry'                                    http://nellyslist.com/





FOR LIST OF
VENUES &
ADDRESSES
PLEASE
CLICK HERE

MI

**nellys list**.com

THE PASSOVER BALL
MUSIC BY DJ ZION

DOORS OPEN AT 10:30PM | FULL K FOR P BAR
CAPACITY CROWD EXPECTED | RAIN OR SHINE

SET | MONDAY APRIL 21ST

TOUCH | TUESDAY APRIL 22ND
910 LINCOLN ROAD, MIAMI BEACH

BED | WEDNESDAY APRIL 23RD
929 WASHINGTON AVENUE, MIAMI BEACH

OPIUM GARDEN | THURSDAY APRIL 24TH
136 COLLINS AVENUE, MIAMI BEACH



# MIAMI

## MONDAY @ **SET**

## TUESDAY @ **TOUCH**

## WEDNESDAY @ **BED**

## THURSDAY @ **OPIUM**

## 10:30PM

**Click Here for Event Details & Pictures**

# EXHIBIT





# NYC

**TOUCH**

THURSDAY 4.24.08

10:30 PM

CLICK HERE FOR MORE EVENT DETAILS

Copyright © 2005 NellysList.com All rights reserved. Division of NJR Productions LLC. All pictures and information are property of NellysList.com and can not be copied or distributed for any purposes other than NellysList.com use. All tickets sales and/or purchases are final & not refundable.

## YOU'RE IN...



It's time that a party promoter bring together the right type of crowd all under one roof. Quality vs Quanity; the right people to the right venue. **NELLYS LIST** continues to select venues and create an atmosphere that will surpass the same old club scene. **Nelly's List** has brought hundreds of good looking, trendy party goers together over the past years. Bringing to you night life variety, new faces, live entertainment and getting sweaty to really good music..... We want to do away with waiting on line with snobby selective bouncers, paying high priced admission charges and just get people to have a really good time on our behalf. Join the only party done with a personal touch....



IF YOU CAN'T SEE THIS MESSAGE PLEASE CLICK HERE: http://www.nellyslist.com/passover2008.htm

# NellysList.com PASSOVER EVENTS

### Upcoming Events

**MIAMI K for P**
**NYC K for P**

**Friends,** Please join **NELLYSLIST** at our annual **Kosher for Passover** parties in both Miami and New York City. Scroll down for schedule details. We worked hard to offer you the best venues so you can enjoy spring break Passover the *HOT* way regardless where you are celebrating. Spread the word about our events - it's the only Kosher gigs done right!  See you out!
**Nelly**

## Monday 4.21.08   KOSHER FOR PASSOVER @ SET

Where: SET

Address: 320 Lincoln Road

When:  MONDAY APRIL 21ST

Doors Open: 10:30 PM

SAY NELLYSLIST AT THE DOOR

MIAMI BEACH, FLORIDA

http://www.setmiami.com/



## Tuesday 4.22.08   KOSHER FOR PASSOVER @ touch

Where: TOUCH

Address: 910 Lincoln Road

When:  TUESDAY APRIL 22ND

Doors Open: 10:30 PM

MIAMI BEACH, FLORIDA

Please join NELLY, The owners of TOUCH Lounge & Hershey Jakob for a very entertaining Kosher for Passover Production. Enjoy a Saxophonist, Drummer & **Exotic** flame thrower plus Miami's best DJ spinning. Full kosher for Passover bar



provided by Glatt Kosher
Touch Catering Inc. Spread
the word - Our Signature
Passover Event- Don't miss
this Party-it will be the best!!



## WEDNESDAY 4.23.08    KOSHER FOR PASSOVER @ BED

Where: B E D

Address: 929 Washington
Ave

When: WEDNESDAY APRIL
23RD

Doors Open: 10:30 PM

SAY NELLYSLIST AT THE
DOOR

MIAMI BEACH, FLORIDA



## THURSDAY 4.24.08    PASSOVER BALL @ OPIUM

Where: OPIUM GARDEN

Address: 136 Collins Avenue

When: THURSDAY APRIL
24TH

Doors Open: 10:30 PM

SAY NELLYSLIST AT THE
DOOR

MIAMI BEACH, FLORIDA



## THURSDAY 4.24.08    NEW YORK CITY'S ANNUAL PASSOVER PARTY

Where: TOUCH NYC

Address: W52 8th Ave &
Bdwy

When: THURSDAY APRIL
24TH

Doors Open: 10:30 PM



**Click here to see full flyer
and event details**

NEW YORK CITY

DJ MARTIAL - EVERYONE
GETS IN- FULL KOSHER
FOR PASSOVER BAR-
BOTTLES START AT $85 &
Up







Email: Nelly@NellysList.com

URL: www.NellysList.com

OFFICE: 917.602.5162

You are receiving this email because you participated in an event we sponsored, or expressed an interest in being notified of our upcoming events. If you were forwarded this email by a friend or received it by any other means than directly from us and wish to be notified of our upcoming events, please use the link below to "SUBSCRIBE" at no charge to our email list. If you do not wish to receive this email in the future, please use the link below to "UNSUBSCRIBE" from our email list. In no way shall NJR Productions LLC., its affiliates, suppliers, or any third parties mentioned in this email or on nellyslist.com be liable for any damages whatsoever (including, without limitation, incidental and consequential damages, lost profits, lost or stolen property, damages resulting from claims, lost data or business interruption) resulting from the use or inability to use this email or nellyslist.com and its material, whether based on warranty, contract, tort, or any other legal theory (whether or not NJR Productions LLC or its affiliates are advised of the possibility of such damages). NJR Productions LLC serves as a promoter for the advertised events listed above. NJR Productions LLC disclaims any warranties on accuracy, merchantability or fitness of the information provided. NJR Productions LLC does not guarantee admission to any events. All tickets sales and/or purchases are final & non refundable.

4/21/2008 5:40 PM